IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
AT BUFFALO

CLAUDIO NUNEZ,

      Plaintiff,

v.

CORRECTIONAL OFFICER SIMPSON,
CORRECTIONAL OFFICER MOSTICO,
CORRECTIONAL SERGEANT M, and
CORRECTIONAL OFFICER JOHN DOE,
IN THEIR INDIVIDUAL CAPACITIES,

      Defendants.

Case no. 21-cv-6501

Second Amended
Complaint and
Jury Demand

## PRELIMINARY STATEMENT

1. This is an action brought by Plaintiff to recover damages for the Defendants' violations of Plaintiff's civil rights in or about April through December 2021, at the Elmira Correctional Facility, located in Chemung County, New York, in the City of Elmira, where he was then incarcerated. Defendants, acting under color of law, interfered with his mail, intentionally and knowingly denied him medical care for serious illness or injury, touched his body in inappropriate ways, and made him violently ill from deleterious substances intentionally and knowingly placed in his food, including HIV infection. He brings claims under U.S. Const. Amends. 1, 8 and 14, and 42 U.S.C. § 1983.

1

## PARTIES

2. Plaintiff Claudio Nunez is currently incarcerated at Auburn Correctional Facility, located in Cayuga County, New York, in the City of Auburn. At all relevant times, he was incarcerated at the Elmira Correctional Facility, located in Chemung County, New York, in the City of Elmira.

3. At all relevant times, Defendant Simpson was a Correctional Officer in the New York Department of Corrections, assigned to Elmira Correctional Facility.

4. At all relevant times, Defendant Mostico was a Correctional Officer in the New York Department of Corrections, assigned to Elmira Correctional Facility.

5. At all relevant times, Defendant Doe was a Correctional Officer in the New York Department of Corrections, assigned to Elmira Correctional Facility.

## PROCEDURAL HISTORY

6. The grievance procedure at Elmira covers some or all of his claims.

7. Plaintiff filed grievances at Elmira regarding the incidents complained of herein.

8. Plaintiff grieved illegal confinement, denial of phone usage, illegal mail watch, tampering with his mail, and sexual battery.

9. No action was taken by officials at Elmira as a result of his grievances.

10. Plaintiff appealed each and every one of his grievances to the highest level of the grievance process.

11. Plaintiff took all necessary steps to exhaust his administrative remedies.

12. Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

13. To the extent that Plaintiff may be found to have failed to administratively exhaust his remedies with regard to any of the claims in this Second Amended Complaint, such exhaustion would have been futile, given the conduct of the Defendants and other Elmira personnel in failing to follow proper procedures in the grievance process, which interfered with his ability to exhaust his remedies, as set forth in detail below. Therefore, such exhaustion requirements have been waived.

## JURISDICTION AND VENUE

14. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, among them the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983. 28 U.S.C. Jurisdiction is also proper pursuant to 28 U.S.C. § 1343(a)(3) and (4) in that this is a civil rights action to redress the rights, privileges or immunities of the Plaintiff, and is based on an Act of Congress providing for the protection of civil rights.

15. Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events and omissions herein are alleged to have been committed within the jurisdiction of the United States District Court for the Western District of New York.

## FACTS

16. During the period March through July 2021, Plaintiff was incarcerated at Elmira Correctional Facility.

17. From March 11, 2021 through May 3, 2021, Plaintiff was housed in H Block-8 Company 10 Cell. He was then moved to H-8-11 until July 15, 2021. He was then moved to H-6-4 Cell, and from there in SHU-21.

18. During the period April 6-10, 2021, Correctional Officer Simpson worked the 3:00 p.m. to 11:00 p.m. shift.
19. During that shift, he sanctioned Mr. Nunez by confining him to his cell (which he refers to as "keep-lock" herein) for six days.
20. During those 6 days. Mr. Nunez was denied usage of the phone, and the mail that he sent and received was not going out or coming in.
21. He filed grievances every day on his illegal confinement.
22. He filed these by giving them to inmates walking to meals, who agreed to drop it into the facility mailbox for him.
23. When his keep-lock sanction had ended, Mr. Nunez asked Officer Simpson why he had been sanctioned to keep-lock.
24. Officer Simpson refused to answer Mr. Nunez.
25. Mr. Nunez also asked Officer Simpson why he couldn't use the phone in the gallery, like the other inmates in the gallery were able to.
26. Again, he refused to answer Mr. Nunez. Instead, he told Mr. Nunez to go to the yard.
27. Plaintiff also filed grievances with regard to these items: (1) the fact that his mail was not being sent out, and (2) misconduct of Correctional Officer Simpson in that he illegally and improperly gave Plaintiff's regular mail to other prisoners, who then used the private information therein to call Plaintiff's family demanding money in an extortionate manner.
28. Plaintiff also complained to other prison officials, including the Warden, the Superintendent, the Deputy of Mental Health Ms. White, and Senior Counselor Swift, regarding his being prohibited from using the telephone, the illegal "keep-lock" confinement, the fact that his mail was not being sent out, and the misconduct of Correctional Officer Simpson in illegally giving out his regular mail to other incarcerees.

29. On April 12, 2021, Correctional Officer John Doe, the A-man on Two Company, had the 7:00 a.m. to 3:00p.m. shift. Officer Doe has a first initial P in his name, and he appears to be a white male. Plaintiff can identify Officer Doe by picture or in person.

30. On that date, Officer Doe illegally placed Plaintiff in "keep-lock." Officer Doe also denied Plaintiff the use of the telephone and the Kiosk.

31. Plaintiff asked Officer Doe why he had done this but received no reply. Plaintiff was unable to see Officer Doe's nametag.

32. On April 20, 2021, at 9:00 a.m., Officer Doe appeared in front of Plaintiff's cell and told him to come downstairs to see the Sergeant.

33. As Plaintiff exited the cell, Officer Doe pushed Plaintiff up against the wall and grabbed Plaintiff's buttocks through his shorts in a sexual manner that was extremely invasive of Plaintiff's body.

34. This was very upsetting to Plaintiff, as it objectively appeared intended to demean Plaintiff, and to suggest that Plaintiff's body, including his sexual characteristics, was under the control of Officer Doe, and/or to gratify Doe's sexual desire.

35. Plaintiff asked Officer Doe why he had done this. Officer Doe ignored him and told Plaintiff to get downstairs.

36. His intentional contact with Plaintiff's intimate area served no penological purpose as a pat frisk. It was objectively intended to humiliate Plaintiff or to gratify his sexual desire.

37. Upon arriving downstairs, Plaintiff saw a Correctional Sergeant. He was unable to see his nametag. He had an initial M, and was a white male, with salt and pepper hair, about 5 feet 7 inches tall, and about 200 pounds. Plaintiff can identify this Sergeant by means of picture or in person.

38. Plaintiff advised the Sergeant that he wanted to file a complaint regarding Officer Doe, the

escort officer, because he grabbed Plaintiff's buttocks.

39. The Sergeant stated, "You'll be okay, we never do nothing."

40. On May 4th, 2021, another inmate was locked in his cell (H-8-11). The adjacent inmate, Mr. Bellamy, burned his cell to Defendants Mustico and Simpson, and others hurt him in the P.C. Yard that was April 12, 2021. They recorded it April 13, 2021. Officer Simpson was intending to "burn" that cell in order to compel Plaintiff to leave his own cell, and to go outside into the 1.P.C. recreation yard.

41. As Plaintiff approached the yard, he saw Officer Simpson and another Correctional Officer he did not recognize waiting in the yard. They stood in a menacing posture, looking very alert, and stared unblinkingly at him as he moved towards the yard entrance.

42. Plaintiff realized that they were waiting for him to enter the yard, but with what purpose he was unsure. He felt certain, however, that they intended to assault him for making complaints, particularly since they had refused to answer any of his questions about his rough treatment, and the Sergeant refused his request to file a grievance.

43. A nurse, whose name Plaintiff did not know, stopped him. She is a white female, and Plaintiff can identify her by picture or in person.

44. The nurse told him that he should be the last person walking out into the yard. She stated that she wanted to walk with him into the yard in order to deter an assault.

45. Because of the assistance of the nurse, the two Officers did not approach Plaintiff, though Plaintiff was placed in great fear of a confrontation with them that could result in injury to himself, both at that time and at a later time because of the manifest animus of Officer Simpson and the other officer in retaliation for Plaintiff's complaints against them and other officers.

46. On June 9, 2021, he was in H-Block 6 Company 4 Cell, that was the day when they poisoned him via Officer Mostico. At the 7:00 a.m. to 3:00 p.m. shift, Correctional Officer Mostico

6

premeditated Plaintiff's illegal confinement in keep-lock, by stating, falsely, that the "whole jail" was locked down.

47. When he served Plaintiff with a meal, Plaintiff became extremely ill as a result of the meal because Officer Mostico placed an adulterating substance in the food, a not uncommon situation when correctional officers are angry with incarcerees because of making complaints.

48. On information and belief, Plaintiff alleges that the adulterating substance was rat poison, which is easily available to officers because of the constant problem of severe rodent infestation at Elmira.

49. Shortly after the meal, Plaintiff was throwing up, sweating profusely, experiencing a severe headache, and having blurred vision for approximately 4 hours.

50. These symptoms are consistent with symptoms of rodenticide poisoning.

51. Officer Mostico ignored Plaintiff's requests to go to emergency sick call.

52. As a result, Plaintiff did not receive appropriate treatment, and no medical inquiry was ever made of why Plaintiff suddenly experienced these symptoms.

53. No other explanation was provided by Defendants as to why Plaintiff would experience such severe symptoms shortly after eating a meal served by Defendant Office Mostico, which officer had already expressed his animus towards Plaintiff for making complaints, as set forth in detail above.

54. Plaintiff grieved this incident, and wrote to the Superintendent, but no one administratively investigated his claims.

55. Plaintiff received other meals into which he believes adulterating substances containing the HIV virus, which cause him to contract HIV. Mr. Nunez also failed to receive lunch on December 1, 2021

56. When Plaintiff was transferred out of Elmira Correctional Facility to Wendy Correctional

Facility, Defendants threw up all his property on July 15, 2021, when he was trtansferred from H-6-4 Cell to SHU-21 Cell, he did not receive dinner, a corrections officer jumped while he was handcuffer. They destroyed and all of his personal property that provided information regarding these incidents and grievances. This spoliation of evidence by Defendants has made it more difficult for Plaintiff to demonstrate the factual validity and administrative exhaustion of his claims.

**CAUSES OF ACTION**

**COUNT 1**
**42 U.S.C. § 1983**
**First Amendment Rights**
**Deprivation of Mail and Telephone**
**[As against Defendants**
**Simpson and Mostico]**

57. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

58. Defendants Officers Simpson and Mostico, in their individual capacities, violated Plaintiff's First Amendment rights by censoring, withholding, and restricting Plaintiff's incoming and outgoing mail without a valid reason or provision of due process, as set forth in detail above.

59. Although Plaintiff grieved this restriction of mail, his grievance was not processed appropriately in accordance with his First Amendment rights because no reason for the deprivation was ever provided to Plaintiff or, to his knowledge, the facility's grievance committee deciding them.

60. Plaintiff was also denied the right to use the telephone without any valid penological reason.

61. By failing to provide this information in the administrative process to the grievance committee at Elmira, Defendants have waived the right to raise new defenses at this time.

# COUNT 2
## 42 U.S.C. § 1983
### Eighth Amendment Deliberate Indifference to a Serious Medical Need; Excessive Force; Sexual Abuse; Fourteenth Amendment Substantive Due Process Rights to Bodily Integrity and Freedom from Unlawful Touching
**[As Against Defendants Officers Mostico Doe, and Sergeant M., in their individual capacities]**

62. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

63. Defendants Officer Mostico and Sergeant M, in their individual capacities, violated Plaintiff's Fourteenth Amendment due process rights to bodily integrity and freedom from unlawful touching, using excessive force and engaging in sexual abuse.

64. Officer Mostico also violated Plaintiff's Eighth Amendment rights by exhibiting deliberate indifference to the serious medical symptoms experienced by Plaintiff after being served a meal by Officer Simpson and becoming violently ill due to, upon information and belief, adulterating materials placed in Plaintiff's food by Officer Simpson, as set forth above in detail.

65. Mr. Nunez saw Sgt. M on two occasions, April 20, 2021 and June 28, 2021, during which he was victimized.

66. As set forth above in detail, Officer Doe pushed Plaintiff up against the wall and grabbed Plaintiff's buttocks through his shorts in a sexual manner that was extremely invasive of Plaintiff's body.

67. His intentional contact with Plaintiff's intimate area served no penological purpose as a pat frisk. It was objectively intended to humiliate Plaintiff or to gratify his sexual or prurient desires and constituted excessive force and a violation of Plaintiff's Eighth Amendment rights because the contact constituted punishment for Plaintiff's complaints against Officer Doe and

other officers.

68. Sergeant M, by condoning and ratifying Officer Doe's actions, refusing Plaintiff's request to file a grievance, and advising that the pattern and practice at Elmira was to take no action in response to complaints, participated personally in the violation of Plaintiff's constitutional rights.

69. Officer Mostico also violated Plaintiff's placed an adulterating substance in Plaintiff's food, as set forth in detail above because of Plaintiff's complaints against him and other officers.

70. On information and belief, Plaintiff alleges that the adulterating substance was rat poison, which is easily available to officers because of the constant problem of severe rodent infestation at Elmira.

71. Shortly after the meal, Plaintiff was throwing up, sweating profusely, experiencing a severe headache, and having blurred vision for approximately 4 hours.

72. These symptoms are consistent with symptoms of rodenticide poisoning.

73. Officer Mustico ignored Plaintiff's requests to go to emergency sick call, constituting deliberate indifference to serious medical need in violation of Plaintiff's Eighth Amendment rights.

74. Plaintiff also received other meals into which he believes adulterating substances containing the HIV virus, which cause him to contract HIV.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Claudio Nunez respectfully requests that this Court enter judgment in his favor and against Defendants Officers Simpson, Mostico and Doe, and Sergeant M, and grant the following relief:

1. Compensatory damages for the harm suffered as a result of Defendants' actions;

2. Punitive damages to deter future violations of constitutional rights;

3. Nominal damages for violation of Plaintiff's dignitary rights; and

4. Such other and further relief as the Court deems just and proper.

Dated: January 5, 2024

/s/ Jillian T. Weiss
Jillian T. Weiss
LAW OFFICE OF JILLIAN T. WEISS, PC
242 Main Street, No. 304
Beacon, New York 12508
Telephone: (845) 709-3237
Facsimile: (845) 684-0160
jweiss@jtweisslaw.com

*Attorney for Plaintiff pursuant to an Order of this Court requiring limited scope representation for purposes of filing a Second Amended Complaint only.*