## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Claudio Nunez,** | **Combined** |
| Plaintiff, | **DECISION and ORDER** |
| v. | **and** |
| **The Superintendent of Elmira Correctional Facility, et al.,** | **REPORT and RECOMMENDATION** |
| Defendants. | 21-cv-6501-DGL-MJP |

## APPEARANCES

For Plaintiff:      **Claudio Nunez, *pro se***
01-A-3050
Sullivan Correctional Facility
Box 116
Fallsburg, NY 12733-0116

For Defendant:      **Muditha Halliyadde, Esq.**
Assistant Attorney General
144 Exchange Blvd, Ste 200
Rochester, NY 14614

## INTRODUCTION

**Pedersen, M.J.** Plaintiffs often wish to add claims and facts to their complaints. Because federal courts take a generous approach to adding claims and facts, they frequently allow plaintiffs to make changes. But courts will not permit pointless changes.

Courts use the term "futile" for such changes. They are pointless, or futile, because if the plaintiff tried to bring them in his or her original complaint, the court would dismiss them. Here, I report and recommend

1

that the Hon. David G. Larimer, Senior District Judge, find some of Plaintiff Claudio Nunez's proposed amendments futile. Otherwise, I **GRANT** Nunez's motion to amend.

Further, because Defendants have not brought a motion to dismiss the two unserved John Doe Defendants under Fed. R. Civ. P. 12(b)(5), I **DENY** Defendants' request that the Court dismiss them. Finally, I likewise **DENY** Nunez's motion for appointment of counsel.

## PROCEDURAL HISTORY

I assume familiarity with the procedural history detailed in the Court's earlier orders. (ECF No. 18, Feb. 23, 2022; ECF No. 13, Nov. 30, 2021.) Since then, the Court has allowed several of Nunez's claims to proceed to service. (Order, ECF No. 25, June 14, 2022 (directing service on Defendants Mustico,[1] Simpson, and John Does).) Two of the defendants have answered. (ECF Nos. 36 & 37, Sept. 6, 2022 (Defendants Simpson and Mustico).) Two defendants remain John Does partly because Defendants have not been able to identify them.[2] (*Valentin*

---

[1] There are two spellings of this Defendant's name on the docket: Mostico and Mustico. While the Court may need to clarify which is correct, for now, the Court simply notes that Mostico and Mustico are the same person. For ease of reading, and consistency with the caption on CM/ECF, I refer to this Defendant as "Mustico."

[2] Defendants assert that Nunez has failed to identify the John Doe Defendants, despite Defendants providing relevant discovery. (Halliyade Reply Decl. ¶ 13, ECF No. 148, Jan. 8, 2024 ("Further, even after 30 months, Plaintiff still failed to identify the John Doe Defendants and therefore, all claims against John Doe Defendants should be dismissed.").) Below, however, I deny their request on procedural grounds.

Response, ECF No. 84, Feb. 2, 2023.) These are: Correctional Officer John Doe and Correctional Sergeant M.

### *With my addition to this case comes a flood of letters from Nunez alleging that he faces dangerous conditions in prison.*

After Defendants Mustico and Simpson answered, Judge Larimer referred this case to me for pretrial matters. (Text Order, ECF No. 42, Sept. 7, 2022.) With my addition to this case came a flood of letters. Nunez writes the Court often.[3]  I cannot talk about all of his letters; there are too many.

One letter worth noting immediately followed the Rule 16 conference. There, Nunez stated: "I need I hope you help me to I will be move out this jail a.s.a.p. my life is in risk."[4] (Letter, ECF No. 55, Oct. 13, 2022.) Nunez went on to allege death threats, stating, "C.O. Doser J. Garrow Stone Newphew Donald J. Askin all make death threat." (*Id.*) Responding, I set a case management conference. (Order, ECF No. 57, Oct. 17, 2022.) But it did not happen: Nunez's November 14, 2022, letter to the Court indicated that he had been transferred to a different correctional facility. (Letter at 1 & 4, ECF No. 63, Nov. 14, 2022.)

---

[3] His letters demonstrate that he has difficulty understanding this case and its limits. I have tried during conferences to tell Nunez that this case is *only about* his claims against Elmira Correctional Facility. Yet Nunez has repeatedly tried to add unrelated facts, writing the Court about separate incidents.

[4] I have not changed the words Nunez put on paper, but I have corrected capitalizations.

***Nunez's response to Defendants' request for more time to complete discovery illustrates his difficulty with understanding court cases.***

Then, in January 2023, Defendants wrote to me asking for more time to complete discovery. They noted that "[i]t took several months to obtain [Nunez's] signature in correct format for the HIPAA forms." (Letter, ECF No. 77, Jan. 17, 2023 (alterations added).) So, I issued an amended scheduling order. (ECF No. 79, Jan. 19, 2023.)

Nunez responded later in January. (Letter, ECF No. 82, Jan. 27, 2023.) His letter shows a lack of understanding of courts and court cases. He stated: "You Hon. with all Respect I no agree with Assistant Attorney General Muditha Halliyadde I requesting the discovery in scheduled time March 31, 2023, because the Defendant attorney want extra time to have me kill death." (Letter at 1, ECF No. 82, Jan. 27, 2023.) Nunez made additional allegations about being unable to use the prison's phone and being subject to a cell shield (discussed below). Having found good cause to amend the scheduling order, I overruled Nunez's objections.

***I appoint counsel to help Nunez amend his complaint.***

Following my amending the scheduling order, Nunez began requesting counsel. His first request indicated that he lacked access to the law library. (ECF No. 67, Dec. 2, 2022.) His second stated, "I speaking Spanish but I understand English." (Mot. for Appointment of Counsel at 1 ¶ 4, ECF No. 75, Jan. 5, 2023.) Finally, in his third request for counsel, he revealed that "my jail condition and my health condition they no

allowed me to get my video conference in 11/16/2022 at 10 am also since I get here … I'm isolate[d] I don't get law library." (Letter at 1, ECF No. 81, Jan. 23, 2023.) Nunez's letter also disclosed that he was subject to a "cell shield order" at the same time. (*Id.* at 3 ("Your screaming and yelling disrupts the entire unit. This behavior will not be tolerated. Future good behavior will warrant the removal of this order.").) Nunez's behavior thus appears to have led to some of his alleged negative treatment in prison, possibly including his lack of law library access.

I granted Nunez's request for appointment of counsel, noting that while Nunez claims to understand English, "it is apparent from his letters[] that it is not his primary language." (Decision & Order at 3, ECF No. 86, Feb. 15, 2023 (citing ECF Nos. 75 & 81).) I added that Nunez's "ability to read and write in English appears limited." (*Id.* at 4.) I thus appointed *pro bono* counsel "to review the amended complaint and draft and file a second amended complaint." (*Id.* at 4–5.) Notably, my decision came before Nunez's deposition. (Letter, ECF No. 87, Feb. 17, 2023 (noting Defendants' adjournment of Nunez's deposition).) Defendants were accordingly on notice that they would need to re-depose Nunez if I granted his motion to amend.

### *Appointed counsel enters the case and begins helping Nunez to bring the pending motion to amend.*

It took over a month for *pro bono* counsel, Jillian T. Weiss, Esq., to be selected and appointed. (Order Appointing *Pro Bono* Counsel, ECF

No. 94, Mar. 31, 2023.) After her appointment, she wrote the Court to explain that "communication is moving slower than desired via the correctional system[.]" (Letter, ECF No. 97, Apr. 24, 2023.) Ms. Weiss noted that she "sent a letter via first class mail to Mr. Nunez on March 31, 2023, but it has apparently not reached him." (*Id.*) "I have learned that the envelope must contain certain words in order for it to be delivered to Mr. Nunez." (*Id.*) Ms. Weiss also detailed her efforts to schedule a call with Nunez, noting unhelpful communications from prison officials. (*Id.* (noting the need for a translator).) She concluded by stating, "I wish to advise the Court that I will do everything possible to get in touch with Mr. Nunez and get this call scheduled as soon as possible, so that he may receive the representation to which he is entitled to address his serious concerns." (*Id.*) This letter is emblematic of the problems Ms. Weiss encountered in trying to amend Nunez's operative amended complaint.[5]

---

[5] Ms. Weiss detailed her communication difficulties to me during conferences and in an email to Chambers when Nunez complained about her representation:

> According to my notes, I contacted Auburn Correctional Facility on March 31, the day I received the order of appointment. Officer Anthony Smith, the officer in charge of communications, stated on his voicemail that all requests must be in writing. A letter was sent to him on April 3. We heard back from Officer Smith on April 19, after much follow up. We received a list of dates in May. We arranged for a Spanish interpreter, and the

call was scheduled for May 5. We were notified on that day that Mr. Nunez was in protective custody, and the call was rescheduled for May 15.

After the call, I began drafting a second amended complaint. This is not my area of expertise, so I spent time researching the elements of the causes of action for constitutional due process violations, and assault. I realized during this process that Mr. Nunez was complaining of a "keep-lock policy," which triggered a memory regarding Monell claims applicable to unconstitutional policies. I contacted Just Cause, the organization in conjunction with which pro bono attorneys operate, to speak to someone there about this issue. I wrote to Mr. Nunez on June 15, and explained to him about the Monell claim and the consultation with Just Cause.

I spoke with an attorney at Just Cause on June 22, who provided much helpful information. Based on the information received, I drafted a *Monell* claim to add to the complaint. On August 9, a copy of the draft second amended complaint was sent to Mr. Nunez. Unbeknownst to us, he had been transferred. After not hearing from him for a few weeks, we made several attempts to contact Officer Smith. Unbeknownst to us, he was on vacation. On September 11, the Court set a teleconference for September 28. I was pleased and relieved to hear of this, and looked forward to addressing these communication issues. That conference was rescheduled for September 29, but was cancelled on that morning. I received an email from chambers on October 3 to see if I could participate in a conference call with the court's deputy for that morning, which I did. I explained the communications problems during that conference, and was advised by Ms. Halliyade, Defendants' counsel that Mr. Nunez had been moved to Coxsackie Correctional Facility. She also requested to speak to me about concerns that she had regarding the *Monell* claim and other issues. That day, we sent the draft second amended complaint to Mr. Nunez at Coxsackie via USPS Priority Mail. We also contacted Coxsackie Correctional Facility the same day to set up a call with Mr. Nunez.

(Email from Jillian T. Weiss, Oct. 17, 2023, on file (italics added for case names).)

Unfortunately, Ms. Weiss' letter is also emblematic of *the Court's* difficulties in holding conferences with Nunez.[6] In separate text orders, I attempted to set conferences with Nunez and the other parties. (ECF No. 113, Sept. 11, 2023; ECF No. 115, Sept. 13, 2023.) Because Nunez was having difficulty communicating with his *pro bono* attorney, I scheduled the conference that would eventually take place on December 1, 2023. (Text Order, ECF No. 126, Oct. 19, 2023.) I reset the conference for November 30, 2023. (Text Order, ECF No. 138, Nov. 13, 2023.) That conference did not happen. Finally, on December 1, 2023, I was able to hold a conference with Nunez, his *pro bono* attorney, and Defendants. (Minute Entry, ECF No. 143, Dec. 1, 2023.)

Meantime, Ms. Weiss had filed a motion to amend for Nunez. (ECF No. 118, Oct. 12, 2023.) Defendants then moved to stay the amended scheduling order, (Letter Mot., ECF No. 122, Oct. 13, 2023), a request that I granted. (Text Order, ECF No. 125, Oct. 17, 2023 (staying the dispositive motion deadline "until the Court decides the pending

---

[6] It is difficult for the Court to take seriously Defendants crying foul about delay and prejudice when Nunez has been involuntarily transferred and made unavailable by DOCCS. The Court has had to reschedule or forgo conferences in this case because DOCCS did not make Nunez available. While the Court cannot direct DOCCS on where to house prisoners, DOCCS and the Attorney General's Office should take note that Courts can and will consider such transfers when approaching a decision like this one. Here, DOCCS' transfers of Nunez—among other things—persuade me that Nunez (and his attorney) were as diligent as they could have been in moving to amend his complaint. Fed. R. Civ. P. 16(b)(4). And Nunez should note that these transfers and prison officials' poor communication are what made it difficult for Ms. Weiss to talk to him.

motion to amend or the issues" that Nunez raised about *pro bono* counsel.) Defendants also filed opposition to Nunez's motion to amend. (ECF No. 124, Oct. 17, 2023.)

Following the December 1 conference, I issued a text order directing Ms. Weiss to file a corrected proposed second amended complaint. (Text Order, ECF No. 142, Dec. 1, 2023.) Ms. Weiss did so, fulfilling her duties to Nunez. (Proposed 2d Am. Compl., ECF No. 146, Jan. 5, 2024.) I permitted Defendants to file opposition to the corrected proposed second amended complaint. (ECF No. 148, Jan. 8, 2024.) And I then ended Ms. Weiss' representation of Nunez. (ECF No. 151, Jan. 24, 2024.) She had done what she promised to do: file Nunez's proposed second amended complaint.

Nunez has sent ten letters since then. I only mention the most recent because it included a request to further amend his complaint and for the appointment of counsel. (ECF No. 160, May 6, 2024.) Nunez "request[s] pursuant to FRCP [ ] 15 permission to amend the pleading to correct" alleged "factual defects … as well as the appointment of new *pro bono* counsel." (*Id.* (alterations added).)

## FACTUAL BACKGROUND

I present the facts alleged in the proposed second amended complaint as compared to the operative amended complaint. Although Defendants point out differences between these versions of Nunez's

allegations, the two largely present the same facts and claims. I cite both to show as much, and to provide necessary background.

To begin, Nunez was housed in Elmira Correctional Facility at all relevant times. (Proposed 2d Am. Compl. ¶¶ 2 & 16, ECF No. 146[7]; Am. Compl. at 2, ECF No. 20.) Nunez's complaint accordingly does not include claims about prisons other than Elmira. Thus, Nunez's letters (and allegations) about other facilities are not relevant.

***Defendants isolate Nunez, possibly to his cell.***

Defendant Simpson "illegally sanctioned" Nunez with "keep-lock" for six days "for no apparent reason." (Proposed 2d Am. Compl. ¶ 19; Am. Compl. at 2.) Keep-lock may refer to Nunez being isolated in his cell, rather than moved elsewhere.

While in keep-lock, Nunez could not use the prison phone and his "mail was not going out." (Proposed 2d Am. Compl. ¶ 20; Am. Compl. at 2.) Nunez likewise alleges that Simpson provided his mail "to other prisoners who called [Nunez's] family for money and affection." (Proposed 2d Am. Compl. ¶ 27; Am. Compl. at 3.) Finally, Nunez alleges he filed grievances and complained to prison officials about Simpson's interference with his mail. (Proposed 2d Am. Compl. ¶¶ 21–22; Am. Compl. at 2–3.)

---

[7] ECF No. 146-1 is a redlined copy of the proposed second amended complaint.

On April 12, 2021, Defendant John Doe allegedly keep-locked Nunez again "for no apparent reason and denied" Nunez use of "the phone and Kiosk." (Proposed 2d Am. Compl. ¶ 30; Am. Compl. at 3.)

### *Nunez alleges sexual assault, adding that prison staff ignored his claim about it.*

On April 20, 2021, Defendant John Doe came to Nunez's "cell and told him to come downstairs to see the Sergeant." (Proposed 2d Am. Compl. ¶ 32; Am Compl. at 3) As Nunez exited the cell, Defendant John Doe allegedly "pushed" Nunez "up against the wall and grabbed" Nunez's "buttocks through his shorts in a sexual manner." (Proposed 2d Am. Compl. ¶ 33; Am. Compl. at 3.) Nunez argues that this encounter "served no penological purpose as a pat frisk" because Defendant John Doe "intended it to humiliate" Nunez "or to gratify his sexual desire." (Proposed 2d Am. Compl. ¶ 36; Am. Compl. at 3.)

When Nunez came to the Sergeant, whose name had the letter "M," he told Sergeant M that "he wanted to file a complaint regarding Officer Doe, the escort officer, because he grabbed [his] buttocks." (Proposed 2d Am. Compl. ¶ 38; Am. Compl. at 3.) The Sergeant allegedly responded that Nunez would "be okay" because "we never do nothing." (Proposed 2d Am. Compl. ¶ 39; Am. Compl. at 3.)

### *Nunez alleges that another inmate "burned his cell" to force him outside.*

Nunez asserts that a neighboring inmate "burned his cell," at the behest of Defendants Mustico and Simpson to force Nunez to exit his cell

and go to the recreation yard. (Proposed 2d Am. Compl. ¶ 40.) Nunez approached the yard. (*Id*. ¶ 41.) "As" Nunez "approached the yard, he saw Officer Simpson and another Correctional Officer he did not recognize waiting in the yard. They stood in a menacing posture, looking very alert[.]" (*Id*.) Nunez surmises that they were there to hurt him. (*Id*. ¶ 42.) However, a nurse stopped Nunez and told him to enter the yard last to deter the assault. (Proposed 2d Am. Compl. ¶¶ 43–45; Am. Compl. at 3.)

### *Defendant Mustico allegedly poisons Nunez's food.*

Nunez alleges a final episode of abuse that happened on June 9, 2021. (Proposed 2d Am. Compl. ¶ 46.) Nunez states that while the facility was locked down, Defendant Mustico served him adulterated food. (*Id*. ¶ 47; Am. Compl. at 3.) Nunez "was throwing up, sweating profusely," had a "severe headache, and [had] blurred vision for approximately 4 hours." (Proposed 2d Am. Compl. ¶ 49 (alteration added); Am. Compl. at 3.) Mustico allegedly refused to allow Nunez "to go to emergency sick call." (Proposed 2d Am. Compl. ¶ 51; Am. Compl. at 3.) Nunez argues that "[n]o other explanation" exists "as to why [he] would experience such severe symptoms shortly after eating a meal served by Defendant Office[r] M[u]stico, which officer had already expressed his animus towards [Nunez] for making complaints[.]" (Proposed 2d Am. Compl. ¶ 53.)

## MAGISTRATE JUDGE JURISDICTION

When a magistrate judge grants a motion to amend, that decision is nondispositive. *See Tibes v. Hanseatic Moving Servs.*, LLC, No. 21CV3293RPKTAM, 2022 WL 1406627, at *2 n.2 (E.D.N.Y. May 2, 2022) (collecting cases) ("A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive."). Because I grant in part and deny in part Nunez's motion, things are trickier.

Judge Larimer has explained that where a magistrate judge finds "that amendment should be denied on the ground of futility," the decision must be by report and recommendation because this "amounts to a conclusion that the proposed amendment would not withstand a motion to dismiss under Rule 12(b)(6)." *Antonacci v. KJT Grp., Inc.*, No. 21-CV-6578L, 2022 WL 1656787, at *2 (W.D.N.Y. May 25, 2022). While I have expressed differences in a recent opinion, I adopt Judge Larimer's approach here. *See Getman v. Vondracek*, No. 20-cv-6999-FPG-MJP, 2024 WL 1793025, at *2–3 (W.D.N.Y. Apr. 25, 2024).

## ANALYSIS UNDER FED. R. CIV. P. 16(b)(4)

### *Nunez must show good cause for his late amendment.*

Ordinarily, Nunez's motion to amend would be governed by Fed. R. Civ. P. 15(a)(2), under which permission to amend "should be freely granted." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Under Fed. R. Civ. P. 15(a)(2), the Court retains discretion to deny the motion "in instances of futility, undue delay, bad faith or dilatory

motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This is a "liberal" and "permissive" standard. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 190 (2d Cir. 2015).

But this case presents a different situation. The deadline for motions to amend lapsed long ago. "The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). "It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only upon a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Id.* (citation omitted); *see also Thomas v. ConAgra Foods, Inc.*, No. 620CV06239EAWMJP, 2022 WL 3699408, at *3 (W.D.N.Y. Aug. 26, 2022) ("When considering an untimely motion for leave to amend, district courts throughout the Second Circuit have held that, '[t]he standards of Rule 16(b) must be met first and cannot be short-circuited by an appeal to those of Rule 15(a).'" (quoting *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, No. 02 CIV. 1230 (LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006))).

The Second Circuit has thus concluded that where a plaintiff moves to amend after the deadline set by a scheduling order, Fed. R. Civ. P.'s 15(a)'s "lenient standard" must be "balanced against" Fed. R. Civ. P. 16(b)(4)'s requirement that "a scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (internal quotation omitted). Rule 16(b)(4)'s "'good cause' standard, rather than the more liberal standard of [Fed. R. Civ. P.] 15(a) governs a motion to amend filed after the deadline a district court has set for amending the pleadings." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000), *overruled on other grounds by Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019).

In sum, if Nunez's motion to amend passes muster under Rule 16(b)(4), I should then analyze it under Fed. R. Civ. P. 15. *Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) ("If the moving party demonstrates diligence under Rule 16, the court then applies Rule 15(a) to determine whether the amendment is otherwise proper."). If it does not, the analysis stops at Rule 16(b).

### My analysis of good cause hinges on Nunez's diligence.

In the good cause analysis, "the primary consideration is whether the moving party can demonstrate diligence[,]" but the Court may also consider "other relevant factors including ... whether allowing the amendment of the pleading at this stage of the litigation would prejudice

defendants."[8] *Kassner*, 496 F.3d at 244. These other factors do not excuse the moving party from demonstrating diligence. *See Engles v. Jones*, 405 F. Supp. 3d 397, 407 (W.D.N.Y. 2019) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)) ("[T]o show good cause, a movant must demonstrate that it has been diligent[.]" (alterations added)). As the Second Circuit has put it, "[a] finding of good cause depends on the diligence of the moving party." *Grochowski v. Pheonix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing *Parker*, 204 F.3d at 340).

"The burden of showing diligence rests on the moving party." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 175 (S.D.N.Y. 2014) (citing *Parker*, 204 F.3d at 340). "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Weisshaus v. Port Auth. of New York & New Jersey*, No. 21-CV-2062-ENV-SJB, 2023 WL 3603414, at *3 (E.D.N.Y. May 23, 2023) (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010)).

### *I find that Nunez has been diligent in bringing his motion to amend.*

On this record, I find that Nunez has been diligent. *First*, I note that I appointed counsel to assist him with amending his complaint after

---

[8] As I discuss below, I do not find that Defendants would be prejudiced by allowing Nunez's proposed second amended complaint to proceed.

the applicable deadline lapsed. (Am. Scheduling Order ¶ 2, ECF No. 79, Jan. 19, 2023; Order Appointing *Pro Bono* Counsel, ECF No. 94, Mar. 31, 2023.) But I appointed *pro bono* counsel because I was concerned that Nunez has trouble understanding English and how he was supposed to proceed. I likewise appointed *pro bono* counsel because I believed there was good cause for Nunez to be able to file a late amended complaint.

*Second*, while it took Nunez's *pro bono* attorney nearly a year to bring the pending motion to amend, this was not for lack of diligence on her part—or Nunez's. Ms. Weiss noted the use of a translator to ensure Nunez understood her. (Letter, ECF No. 97.) And she detailed the difficulties she had in communicating with him. (*Id.*; *see also supra*, n.4.) Her declaration in support of the motion to amend recounts her efforts.

Because of Ms. Weiss' efforts, this is not a case where Nunez failed to "promptly" bring a motion to amend after he learned the facts necessary to do so. *Port Auth. Police Benevolent Ass'n., Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016) ("Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate."). While in the context of relation back, I have little doubt that Defendants have been

aware of "the general fact situation alleged in the original pleading."
*Stevelman v. Alias Rsch., Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)) (citation
omitted) (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973),
*as amended* (Oct. 3, 2006). The new facts and claims I permit Nunez to
add below in discussing futility all fall within what Defendants should
already know.

Finally, I note that unrepresented "litigants are afforded [ ] leni-
ency in the context of a Rule 16(b) inquiry." *Case v. Clivilles*, No. 12-CV-
8122 (TPG), 2016 WL 5818577, at *3 (S.D.N.Y. Oct. 4, 2016) (citing
*Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)). This impacts the
time before I appointed Nunez *pro bono* counsel to help him amend his
complaint. Should Defendants disagree with my conclusions, they have
forfeited any objection based on Rule 16: Defendants' arguments before
me say nothing about Rule 16's good cause requirement. *See, e.g., Hub-
bard v. Kelley*, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) (noting that
district courts "will not consider new arguments raised in objections to
a magistrate judge's report and recommendation that could have been
raised before the magistrate [judge] but were not").

## ANALYSIS UNDER FED. R. CIV. P. 15

Having found good cause to allow Nunez to bring a late motion to
amend, I turn to Rule 15. I find that Nunez's motion should be
**GRANTED IN PART** and I recommend that his motion be **DENIED
IN PART**.

***Courts should permit amendment—unless they have a good reason not to do so.***

"Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.*'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182). "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983)).

***One good reason courts will deny a motion to amend is futility.***

The Court may still deny a motion to amend for futility. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile."). This requires an analysis under Fed. R. Civ. P. 12(b)(6). *See Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (internal quotations omitted) (holding that motions to amend are futile if they fail to "pass muster under Rule 12(b)(6)"). So, I must ascertain whether Nunez's proposed amendments add new facts, and if so, if they plausibly state a claim for relief. *See Morales v. New York Univ.*, 585 F.

Supp. 3d 610, 613 (S.D.N.Y. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Relevant here, Nunez must state valid (*i.e.*, non-futile) claims under 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir.1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"To establish liability against a prison official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). The theory of *respondeat superior* is not available in a Section 1983 action. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (alteration added) (quoting *Iqbal*, 556 U.S. at 676).

### *I will permit Nunez to maintain claims about mail interference, sexual touching, and adulterated food in his second amended complaint.*

As discussed, regarding the allegations and claims I am allowing Nunez to add, this is a decision and order. As for the allegations and claims that I am denying, because I deny them on futility grounds, I am issuing a report and recommendation.

### Nunez alleges a plausible claim that Defendants Simpson and Mustico interfered with his mail.

While in keep-lock, Nunez could not use the prison phone and his "mail was not going out." (Proposed 2d Am. Compl. ¶ 20, ECF No. 146; Am. Compl. at 2.) I find that it would be reasonable to infer that Defendant Simpson thus deprived Nunez of both outgoing and incoming mail. So, that allegation is a part of the complaint. Nunez adds that Defendant Mustico put him in keep-lock. (Proposed 2d Am. Compl. ¶ 46.) This gives rise to the same inference.

Nunez likewise alleges that Simpson provided his mail "to other prisoners," who called Nunez's "family demanding money in an extortionate manner." (Proposed 2d Am. Compl. ¶ 27; Am. Compl. at 3.) This likewise gives rise to an inference that Simpson was interfering with Nunez's incoming mail. Finally, Nunez alleges he filed grievances and complained to prison officials about Simpson's interference with his

mail. (Proposed 2d Am. Compl. ¶¶ 21–22; Am. Compl. at 2–3.) With these inferences explained, I analyze Nunez's allegations under applicable law.

Nunez's claims about his mail sound in the First Amendment. As the Second Circuit has noted, "[t]here is no question [ ] that an inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of … the First Amendment[.]" *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) (alterations added). A prisoner's right to "free flow of incoming and outgoing mail" is protected by the First Amendment. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation ... and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Id.* (cleaned up and citation omitted).

In general, a single incident is insufficient to establish a constitutional violation. *See Steve v. Arnone*, 627 F. App'x 50, 50 (2d Cir. 2016) (affirming dismissal of claim based on "one isolated instance of interference with legal mail"). However, "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal

representation received." *Davis*, 320 F.3d at 351 (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). Typically, a plaintiff must allege "specific allegations of invidious intent or of actual harm where the incidents of [mail] tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.* (citations omitted); *see also Zimmerman v. Pautz*, No. 12-CV-00763A(F), 2020 WL 13358554, at *7 (W.D.N.Y. June 2, 2020).

I find that Nunez has met the threshold of stating a claim for interference with his incoming and outgoing mail. The complaint recounts multiple incidents of possible mail interference, alleging an ongoing practice of interfering with Nunez's mail. Additionally, the complaint alleges which Defendants interfered with Nunez's mail. But this case may bear out that DOCCS was justified in placing Nunez in keep-lock.[9]

Further, Nunez asserts that Defendant Simpson gave his "mail to other incarcerees" and to others who allegedly contacted Nunez's family. (Proposed 2d Am. Compl. ¶ 28.) This suggests invidious intent. To sum up, I find that the complaint plausibly alleges mail interference claims against Defendants Mustico and Simpson.

---

[9] I noted that Nunez attached an exhibit to one of his letters suggesting he may have been isolated for bad behavior. But that document is not part of the complaint.

**Any mention of Officer Simpson serving Nunez adulterated food appears to be an error.**

Defendants ask the Court to reject any claims Nunez brings against Defendant Simpson for serving Nunez with allegedly adulterated food. I agree, but I determine that this was likely an oversight by Nunez's *pro bono* counsel. The complaint (and amended complaint) consistently indicate that Mustico served Nunez the adulterated meal, not Simpson. I therefore construe the complaint as making claims about adulterated food only against Mustico. So construed, there is no claim about Officer Simpson serving Nunez adulterated food, making Defendants' argument moot.

**Likewise, based on the substance of the proposed second amended complaint, Nunez intended, in paragraph 63, to allege due process claims against Defendants John Doe and Sergeant M.**

Paragraph 63 of the proposed second amended complaint is ambiguous as to which Defendants are alleged to have committed which actions against Nunez. As for the allegations of sexual assault, the body of the proposed second amended complaint plainly refers to Defendants John Doe and Sergeant M, yet paragraph 63 inexplicably refers to Mustico and Sergeant M instead:

> Defendants Officer M[u]stico and Sergeant M, in their individual capacities, violated Plaintiff's Fourteenth Amendment due process rights to bodily integrity and freedom from unlawful touching, using excessive force and engaging in sexual abuse.

(Proposed 2d Am. Compl. ¶ 63, ECF No. 146.) Defendants object to this allegation insofar as it alleges that Mustico and Sergeant M—not Sergeant M and John Doe—are liable for Nunez's sexual assault:

> There were no due process violation claims against Officer Mustico in [the] FAC. However, the proposed amended complaint contains claims regarding Fourteenth Amendment Due Process as against Defendant Mustico.

(Response at 5, ECF No. 148.) Thankfully, the body of the proposed second amended complaint clears up who Nunez is alleging assaulted him:

> 29. On April 12, 2021, Correctional Officer John Doe, the A-man on Two Company, had the 7:00 a.m. to 3:00p.m. shift. Officer Doe has a first initial P in his name, and he appears to be a white male. Plaintiff can identify Officer Doe by picture or in person.
>
> [...]
>
> 32. On April 20, 2021, at 9:00 a.m., Officer Doe appeared in front of Plaintiff's cell and told him to come downstairs to see the Sergeant.
>
> 33. As Plaintiff exited the cell, Officer Doe pushed Plaintiff up against the wall and grabbed Plaintiff's buttocks through his shorts in a sexual manner that was extremely invasive of Plaintiff's body.
>
> [...]
>
> 35. Plaintiff asked Officer Doe why he had done this. Officer Doe ignored him and told Plaintiff to get downstairs.
>
> [...]
>
> 37. Upon arriving downstairs, Plaintiff saw a Correctional Sergeant. He was unable to see his nametag. He had an initial M, and was a white male, with salt and pepper hair, about 5 feet 7 inches tall,

and about 200 pounds. Plaintiff can identify this Sergeant by means of picture or in person.

38. Plaintiff advised the Sergeant that he wanted to file a complaint regarding Officer Doe, the escort officer, because he grabbed Plaintiff's buttocks. 39. The Sergeant stated, "You'll be okay, we never do nothing."

(Proposed 2d Am. Compl. ¶¶ 29, 32–33, 35, 37–38; *see also id.* ¶ 66.) As these allegations show, Nunez intends to allege due process claims against Defendant John Doe and Sergeant M. Separately, similarly, he intends to state an excessive force claim against Officer Mustico for allegedly poisoning his food. (*Cf.* Order at 7, ECF No. 25, June 14, 2022 ("The Court construes [Nunez's] allegation that CO M[u]stico put rat poison in his food … as an excessive use of force claim under the Eighth Amendment.").) Because Defendants do not argue that the underlying claim here is futile, I permit Nunez's proposed second amended complaint to go forward with this allegation as I have interpreted it.

### *I find that the destruction of property, HIV allegations, and allegations that Elmira staff failed to serve Nunez meals are futile, among others.*

#### Any claims about destruction of property are futile.

Judge Larimer already found that Nunez's claim concerning destruction of his property should not proceed. (Order at 10, ECF No. 25, June 14, 2022.) Yet Nunez seeks to add a paragraph to his complaint about destruction of his property:

When Plaintiff was transferred out of Elmira Correctional Facility to Wendy Correctional Case

> Facility, Defendants threw up all his property on July 15, 2021, when he was trtansferred [sic] from H-6-4 Cell to SHU-21 Cell, he did not receive dinner, a corrections officer jumped while he was handcuffe[d]. They destroyed and all of his personal property that provided information regarding these incidents and grievances. This spoliation of evidence by Defendants has made it more difficult for Plaintiff to demonstrate the factual validity and administrative exhaustion of his claims.

(Proposed 2d Am. Compl. ¶ 56, ECF No. 146.) Because Judge Larimer's order operates as law of the case, I report and recommend that Judge Larimer not permit Nunez to add this allegation to his complaint because it is futile. *See Allah v. Adams*, 573 F. Supp. 3d 904, 910 (W.D.N.Y. 2021) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016)). In any event, the reasoning of Judge Larimer's earlier order applies here on the substance of Nunez's allegation, rendering it futile. (Order at 10, ECF No. 25 ("Thus, to the extent that [Nunez] brings a claim against [Defendants] for the confiscation or destruction of his property, the claim fails because the New York Court of Claims provides an adequate remedy … This claim is dismissed with prejudice." (alterations added and citation omitted)).)

**Nunez's claims about HIV and his cell being "burned" are frivolous.**

While Nunez explains why Mustico would have poisoned him, how he would have done it, and details his symptoms, Nunez baldly asserts that he "received other meals" containing what he "believes" was the HIV virus. (Proposed 2d Am. Compl. ¶¶ 55 & 74, ECF No. 146.) For the same reasons that Judge Larimer found that such "unelaborated claims that he was poisoned" should be "dismissed as frivolous," I report and recommend that this claim not be permitted to proceed. (Order at 7, ECF No. 18, Feb. 23, 2022 ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).) I defer to and adopt Judge Larimer's reasoning from his order performing an initial review of this case, in which he ultimately rejected Nunez's claims about poisoning:

> Plaintiff's bare allegations that prison officials poisoned him, intentionally infected him with tuberculosis, COVID-19, and H.I.V., and sought to hunt and kill him in the yard certainly rise to the level of the irrational or the wholly incredible. Moreover, he does not identify or name any individuals with personal involvement. These claims are dismissed with prejudice as factually frivolous and for lack of personal involvement.

(*Id.* at 8.) I warn Nunez that I will strike, *sua sponte*, any attempts to add such claims to his complaint in the future under Fed. R. Civ. P. 12(f).

I thus report and recommend that Nunez's claim against Defendants under the Fourteenth Amendment regarding bodily integrity be found futile insofar as Nunez baselessly claims that HIV was placed in his food. (Proposed 2d Am. Compl. ¶¶ 1, 55, 74, ECF No. 146.)

### Nunez's claims about failing to receive meals fail to plead personal involvement.

To establish liability against a government official under 42 U.S.C. § 1983, a plaintiff must plead personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))). So, "a plaintiff must plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Personal involvement means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Here, Nunez does not allege that any named Defendants personally failed to give him meals. Because Nunez inadequately alleges personal involvement by failing to refer to any Defendant, his claim is futile.

*See Richard v. Fischer*, 38 F. Supp. 3d 340, 356 (W.D.N.Y. 2014) (personal involvement was inadequately pled with respect to some defendants when the plaintiff "alleged in a conclusory fashion" that they conspired to deprive him of his rights); *Hernandez v. Goord*, 312 F. Supp. 2d 537, 547 (S.D.N.Y. 2004) (personal involvement was inadequately pled when the plaintiff did not mention the defendant's name "at all in the body of the complaint" except in his "list of defendants").

### To the extent that Nunez's proposed second amended complaint asserts claims against Defendants in their official capacities, such claims are futile.

The second amended complaint does not appear to allege claims against Defendants in their official capacities. The caption, for example, notes that Nunez is suing Defendants in their individual capacities. Yet the first claim of the proposed second amended complaint does not specify that Nunez is bringing it against Defendants in their individual capacities. (Proposed 2d Am. Compl. at 8, ECF No. 146 (noting that Count One is asserted "against Defendants Simpson and M[u]stico").) To the extent that Nunez has brought this claim against Defendants in their official capacities, it is futile. The Eleventh Amendment bars such claims.

The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived this immunity. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 68 (1996) ("Although a case may arise

under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens."). This immunity extends to state agencies, like DOCCS, and state agents in their official capacities. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity[.]" (alterations added)). Nunez thus cannot bring claims against such defendants in their official capacities. *See Guarneri v. West*, 518 F. Supp. 2d 514, 519 (W.D.N.Y. 2007) ("To the extent that plaintiff's claims are asserted against defendants in their official capacities, the claims are barred by the Eleventh Amendment and must be dismissed. The Eleventh Amendment bars lawsuits by citizens against a state unless the state has waived its sovereign immunity." (citation omitted)).

### *Defendants have not shown prejudice.*

Because I intend to permit several of Nunez's new allegations and claims to come into his complaint, I must analyze prejudice under Fed. R. Civ. P. 15 and 16. Here, if Defendants show prejudice, they could defeat Nunez's motion to amend in one fell swoop. But they do not.

### Courts consider several factors in analyzing prejudice.

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or

bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "A litigant may be 'prejudiced' within the meaning of the rule if the new claim would: '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *Block*, 988 F.2d at 350). These are not the only factors for me to consider.

"Courts also consider the particular procedural posture of the case." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016); *see also Ruotolo*, 514 F.3d at 192 ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981))); *Zorilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 478–79 (S.D.N.Y. 2017) ("Prejudice is suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." (internal quotations omitted)). In considering the procedural posture, it is worth mentioning that courts also consider whether the non-moving party had notice of the claims to be

added, and whether the new claims arise from the same transaction as the claims in the operative pleading. *See, e.g., Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) ("Defendants' untimely amendment did not unfairly surprise plaintiffs or impede the fair prosecution of their claims.").

Finally, the "prejudice inquiry involves a balancing process," weighing any potential prejudice the opposing party would experience if the amendments were granted against any prejudice the moving party would suffer if its proposed amendment were denied. *Oneida Indian Nation of N.Y. v. Cty of Oneida, N.Y.*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000). "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Agerbrink,* 155 F. Supp. 3d at 454 (internal citations omitted); *see also Oneida Indian Nation of N.Y.*, 199 F.R.D. at 77 (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice).

### Defendants have not shown undue prejudice.

Here, Defendants seem confident about prejudice; they argue that it is "unequivocally present." (Mem. of Law at 8, ECF No. 148-1, Jan. 8, 2024.) Defendants point out that they will need time for discovery on the "new facts and claims" against them, adding that Nunez's delay caused this. (*Id.* at 8.) "In these circumstances," Defendants state, "it is clear that [Nunez's] inexcusable and unreasonable delay has caused

Defendants to incur additional expenses, delay[ing] [ ] discovery." (*Id*. at 9 (alterations added).) But courts will not deny a motion to amend based only on added expense or time for discovery.

"Mere delay" without "a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Pasternack*, 863 F.3d at 174 (quoting *Block*, 988 F.2d at 350). Defendants will have to show something more to reach undue prejudice.

Unfortunately, Defendants have little to add. Their "complaints of 'the time, effort and money … expended in litigating" Nunez's claims, "without more," do not "constitute prejudice sufficient to warrant denial of leave to amend." *Id*. (quoting *Block*, 988 F.2d at 351). Indeed, in *Pasternack*, the Second Circuit reversed a district court's decision denying leave to amend "based solely on delay and litigation expense[.]" *Id*. I thus find Defendants' arguments unpersuasive, with one exception.

Admittedly, this case had reached the eve of dispositive motions. Defendants point this out. And discovery was supposed to close by August 31, 2023. I still find that allowing Nunez to amend his complaint is appropriate.

*First*, I foresaw these issues in trying to set a case management conference to discuss the motion to amend. (Text Order, ECF No. 112, Sept. 6, 2023 ("The purpose of the conference is to discuss the scheduling and completion of discovery and date to file dispositive motions[.]").)

Even then, I anticipated needing to extend the deadlines in this case. So, Defendants have had *some* notice that I might extend deadlines, including from my initial appointment of *pro bono* counsel for Nunez. And it is not unheard of to allow a motion to amend after the close of discovery, but before the deadline for dispositive motions. *See, e.g., JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 CIV. 9116(PGG), 2009 WL 1357946, at *5 (S.D.N.Y. May 12, 2009) (granting motion to amend after the close of fact discovery but before filing of dispositive motions and trial).

*Second*, aside from signaling on the docket that I would permit Nunez to amend, Nunez's new claims and facts arise from the same transactions as the claims in the operative amended complaint. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 1:19-CV-5263-GHW, 2020 WL 7629876, at *4 (S.D.N.Y. Dec. 22, 2020) ("Central to this analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of the new claim." (quoting *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, No. 18CIV4273PMHJCM, 2020 WL 5089444, at *3 (S.D.N.Y. Aug. 28, 2020))). I discussed the similarities in addressing futility: Nunez relies on the same underlying incidents, but simply adds new facts concerning them. *See id.*, at *4 ("Here, the proposed amendment would not unduly prejudice Defendants because it pleads additional factual allegations on

which Plaintiff bases his claim for securities fraud in connection with the statements contained in the valuation provided to Lickteig, rather than adding entirely new claims or defendants."). That is hardly prejudicial.

*Finally*, Defendants fail to meet their burden on prejudice because Nunez was as diligent as he could have been in bringing his pending motion to amend. I do not attribute much, if any, of the delay in this case to Nunez. Instead, the record illustrates what is typical of prisoner litigation: slow responses (or no responses) from prison officials, unexpected transfers that scuttle conferences, and sudden unavailability of incarcerated litigants. That is not Defendants' fault, nor their counsel's, but it is likewise not attributable to Nunez. *Cf. Huber v. Nat'l R.R. Passenger Corp.*, No. 10 CIV. 09348 ALC DF, 2012 WL 6082385, at *3 (S.D.N.Y. Dec. 4, 2012) (finding good cause for failure to amend complaint by the applicable deadline where counsel could not communicate with an "unreachable" client). For these reasons, Defendants have not shown undue prejudice.

## THE COURT WILL NOT DISMISS THE JOHN DOES[10]

Part of Defendants' opposition to Nunez's motion to amend argues that because Nunez has not identified the John Doe Defendants in his

---

[10] Because I decide this issue on procedural grounds, and give leave for Defendants to renew their motion, I find it is appropriate to issue this portion

complaint, claims and allegations against them cannot be added in the proposed second amended complaint. (Mem. of Law, ECF No. 148-1 at 7.) Defendants rely on Fed. R. Civ. P. 4(m) which provides: "If a defendant is not served within 90 days after the complaint is filed, the court— *on motion* or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." (Emphasis added). Despite this rule's requirement that dismissal be on motion, Defendants have not filed a motion under Rule 12(b)(5) for dismissal due to Nunez's putative failure to comply with Rule 4(m).

Put another way, I do not think it appropriate for Defendants to raise this issue in their papers opposing Nunez's motion to amend. Perhaps Defendants could have cross-moved while opposing Nunez's motion amend to dismiss the John Doe Defendants. But they did not.

Separately, the Court has not provided notice to Nunez that he needs to serve or identify the John Doe Defendants. It would be an abuse of discretion to dismiss the John Does without providing Nunez notice. *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) ("In the Rule 4(m) context, a district court abuses its discretion when ... it dismisses a

---

as a decision and order rather than a report and recommendation. And I find it appropriate to give this topic its own section, rather than addressing it alongside Defendants' other arguments against permitting Nunez's proposed second amended complaint. Defendants may bring an appropriate motion under Fed. R. Civ. P. 4(m) and Fed. R. Civ. P. 12(b)(5) within a reasonable time following this order.

complaint *sua sponte* for lack of service without first giving notice to the plaintiff and providing an opportunity for her to show good cause for the failure to effect timely service."). I deny Defendants' dismissal request about the John Doe Defendants on procedural grounds.

### THE COURT WILL NOT APPOINT COUNSEL

Nunez has moved again for appointment of counsel. (ECF No. 160, May 6, 2024.) Because I do not think his claims are likely to succeed, I **DENY** Nunez's motion.

"Unlike criminal defendants, prisoners and indigents filing civil actions have no constitutional right to counsel." *Mackey v. DiCaprio*, 312 F. Supp. 2d 580, 581 (S.D.N.Y. 2004) (quotation omitted). Still, in rare cases, the Court may appoint an attorney to help a pro se party. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The decision to appoint counsel is within "the discretion of the court." *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984) (citation omitted). But the Court is mindful that there are far more requests for attorneys than the Court can provide. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) ("Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily."). The Court should carefully consider the law before granting a pro se party an attorney. *See id.* (noting that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause"). Even so, "for prison inmates, the court should

also give weight to the plaintiff's lack of practical access to attorneys." *Carlton v. Pearson*, 351 F. Supp. 3d 265, 268 (W.D.N.Y. 2018) (citing *Cooper*, 877 F.2d at 173–74).

### Apart from meeting the pleading standard, Nunez's claims do not appear to be of substance.

"In evaluating a pro se litigant's request for appointment of counsel the Second Circuit require[s] the court to consider first whether the indigent's position appears likely to be one of substance." *Davidson v. Goord*, 259 F. Supp. 2d 236, 237 (W.D.N.Y. 2002) (alteration added) (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)). "Only after an initial finding that a claim is likely one of substance," should the Court "consider secondary factors." *Carmona*, 243 F.3d at 632 (citation omitted). Those secondary factors include "the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute." *Id.* (citation omitted).

For substance, while I have granted much of Nunez's motion to amend, I have doubts about whether his claims have merit beyond meeting the futility standard and overcoming Defendants' opposition. As discussed, some of Nunez's isolation to his cell was discipline for his behavior. I am likewise skeptical of his claim that he was inappropriately touched. A pat frisk may be normal procedure before bringing a prisoner

to a new area. And Nunez's application for counsel provides nothing in the way of analysis of this factor or any others.

***The remaining factors do not persuade me.***

Even if I considered the other factors, I would not be persuaded to appoint counsel. True, Nunez is not "able to investigate the crucial facts" concerning his claim. *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997). After all, he is incarcerated. And I likewise conclude that providing Nunez with counsel would make this case more likely to reach a just outcome given Nunez's apparent difficulty with understanding court proceedings.

But the legal issues here do not appear complex: if there were legitimate penological reasons for Nunez's isolation, his claims are likely to fail. Similarly, if the prison produces evidence that Defendant John Doe needed to pat-frisk Nunez, Nunez's claim about inappropriate touching may likewise fail. So too with conflicting evidence. If the prison produces evidence that Defendants' actions served legitimate penological purposes, most—if not all—of Nunez's claims will fail. Thus, I conclude that appointment of counsel is not warranted for Nunez to take another crack at amending his complaint. Nunez may renew his request later, for example, when Defendants file additional motions in this case.

## CONCLUSION

For these reasons, the Court ORDERS as follows:

**First,**

Nunez's motion to amend, (ECF No. 118), is **GRANTED IN PART**, and I recommend to the Hon. David G. Larmier that it be **DENIED IN PART**. ECF No. 146 is now the operative complaint, as modified by the Court herein (for those items that I have decided by decision and order) and by Judge Larimer in an order addressing those items about which I have issued a report and recommendation.

**Second,**

I **DENY** on procedural grounds, and with leave to renew, Defendants' request that the John Doe Defendants be dismissed. I give Defendants leave to renew this motion pursuant to Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 4(m). Such motion should be made returnable before Judge Larimer. By separate text order, I will set a case management conference to discuss a dispositive motion deadline. However, as stated, Defendants may bring their motion pursuant to Rule 12(b)(5) and 4(m) at any time.

**Third,**

I **DENY** with leave to renew Nunez's most recent request for appointment of counsel. Nunez may request counsel again later, such as when Defendants file additional motions in this case.

**Fourth,**

Concerning Nunez's "request pursuant to FRCP [ ] 15 [for] permission to amend the pleading to correct" alleged defects, Nunez does

not need this Court's permission to *attempt* to file another amended complaint. (ECF No. 160.) So, I deny that request as moot. But I note for Nunez that attempting to amend his complaint again will be an uphill battle. He will (again) need to demonstrate good cause and that the alleged defects he would like to cure would not be futile. And he will need to file a proposed third amended complaint.

**Finally, pursuant to 28 U.S.C. § 636(b)(1), it is hereby**

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v.*

*Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

Dated:    May 29, 2024
          Rochester, NY

MARK W. PEDERSEN
United States Magistrate
Judge